**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EASY FINANCIAL, LLC,

                 Plaintiff,

  v.

CHURCHILL MRA FUNDING I, LLC

                 Defendant.

_____

CHURCHILL MRA FUNDING I, LLC

                 Counter-Plaintiff,

  v.

EASY FINANCIAL, LLC,

                 Counter-Defendant.

_____

CHURCHILL MRA FUNDING I, LLC,

                 Third-Party Plaintiff,

  v.

BENJAMIN DONEL,

                 Third-Party Defendant.

Case No. 23-cv-2948 (GHW) (SLC)

September 27, 2023

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION PURSUANT TO**
**FEDERAL RULES OF CIVIL PROCEDURE 12(c) AND 12(f)**

**TOPTANI LAW PLLC**
375 Pearl Street, Suite 1410
New York, New York  10038
Telephone: 212-699-8930
*Counsel for Plaintiff Easy Financial, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES…………………………………………………….....(ii)

PRELIMINARY STATEMENT…………………………………………………………1

ARGUMENT……………………………………………………………………....3

I.   Standard of Review……………………………………………………...4

II.  The Counterclaims Must be Dismissed Because Churchill Lacks Standing……………..5

     A.   Churchill Assigned all of its Rights to Sunrise…………………………….…..5

     B.   The Release Churchill Provided to Easy Financial in the Settlement Agreement
          Completely Precludes the Counterclaims…………………………………….…..8

     C.   Churchill is not Authorized to Maintain its Counterclaims…………………...12

III. Most of Churchill's Counterclaims Should Also be Dismissed on Other Grounds…….12

     A.   Churchill's Second Counterclaim for Declaratory Relief………………….…….12

     B.   Churchill's Third Counterclaim for Conversion………………………………...14

     C.   Churchill's Fourth Counterclaim for Unjust Enrichment………………….…….15

     D.   Churchill's Fifth Counterclaim for Wrongful Misappropriation……………....16

     E.   Churchill's Fraud Related Counterclaims……………………………………….16

     F.   Eighth Counterclaim for Declaratory Judgment Based Upon
          Economic Distress……………………………………………………………….20

     G.   Churchill's Ninth Counterclaim for Declaratory Judgment Based Upon Lack of
          Meeting of the Minds…………………………………………………………….22

IV.  Churchill's Affirmative Defenses to the Settlement Agreement
     Should Also be Stricken………………………………………………………….25

CONCLUSION……………………………………………………………...…..25

(i)

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                             **Page(s)**

*2 Broadway LLC v. Credit Suisse First Boston Mtge. Capital LLC,*
    2001 U.S. Dist. LEXIS 4875 (S.D.N.Y. Apr. 20, 2001, No. 00 Civ. 5773)………9, 12, 21

*Aaron Ferer & Sons Ltd., v. Chase Manhattan Bank, Nat'l Ass'n,*
    731 F.2d 112 (2d Cir. 1984)) …………………………………………………..……6

*Acumen Re Mgt. Corp. Gen. Sec. Natl. Ins. Co.*,
    2012 U.S. LEXIS 127809 (S.D.N.Y. Sep. 7, 2012, No. 09 CV 01796 (GBD))……...… 24

*Arbitron, Inc. v. Tralyn Broad, Inc.*, 400 F.3d 130 (2d Cir. 2005)…………………..……22, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………...4

*Berman v. Sugo LLC*, 580 F. Supp. 2d 191 (S.D.N.Y. 2008)……………………………15

*Bridgestone/Firestone v Recovery Credit Servs.*, 98 F3d 13 (2d Cir 1996)…………………17, 19

*Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2004)………………………………………...8

*Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462 (S.D.N.Y)…………………... 16

*Capital Mgt. Select Fund v. Bennet*, 680 F.3d 214 (2d Cir. 2012)………………………18

*Carney v. Carozza*, 16 A.D.3d 867 (3d Dept. 2005)…………………………….…………24

*Chachkes v David*, 2021 U.S. Dist. LEXIS 5652
    (S.D.N.Y. Jan. 12, 2021, No. 20-cv-2879 (LJL))…………………………….……………21

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133 (S.D.N.Y. 2000)…………..………14

*Clayton Servs. LLC v Sun W. Mtge. Co.,*
    2023 U.S. App. LEXIS 8081 (2d Cir Apr. 5, 2023, No. 22-511)…………….…………22

*Compagnie Financiere CIC L'Union Europeenne v. Merrill Lynch,*
    *Pierce, Fenner & Smith, Inc.* 232 F.3d 153 (2d Cir. 2000)…………………......…24, 25

**Cases**                                                                                   **Page(s)**

*Coresello v. Verizon N.Y., Inc.*, 18 N.Y. 777 (2012)...…………………………….……..…15

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104 (2d Cir. 2010)…………………………….…4

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384 (2d Cir. 2005)…...………13

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004)……………………………………………….………...…5

*Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 305 A.D.2d 268 (1st Dept. 2003)……...………….14

*GEOMC Co. v. Calmare Therapeutics*, 918 F.3d 92 (2d Cir. 2019)………………….……5, 25

*Georgia Malone & Co. v Rei*der, 19 N.Y.2d 511 (2012)………………………….……15

*Goldberg v Pace Univ.*, 535 F. Supp. 3d 180 (S.D.N.Y. 2021)………………………….……15

*Hewett v. Leblang*, 2012 U.S. Dist. LEXIS 93123
    (S.D.N.Y. July 5, 2012, 12 Civ. 1715 (PKC))………………………………...…………21

*Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC*,
    U.S. Dist. LEXIS, 11130 (S.D.N.Y. June 9, 2005)…………………………………11

*House of Eur. Funding Ltd. v. Wells Fargo Bank, N.A.*,
    2014 U.S. Dist. LEXIS 49894 (S.D.N.Y. March 31, 2014)……………….………...6

*Intellectual Capital Partner v Inst. Credit Partners LLC*,
    2009 U.S. Dist. LEXIS 58768 (S.D.N.Y. July 8, 2009)………………….…………13

*Int'l Halliwell Mines v. Continental Copper and Steel Indus.*,
    544 F.2d 105 (2d Cir. 1976)………………………………………...….…………20

*Intercon Sols., Inc. v Basel Action Network*,
    969 F. Supp. 2d 1026 (N.D. Ill. 2013)…………………………………...….………13

*Jeffers v. Am. Univ. of Antigua*, 125 A.D.3d 440 (1st Dept. 2015)………………….………14

*Kamermann v. Steinberg*, 891 F.2d 424 (2d Cir. 1989)………………………….…………21

(iii)

**Cases**                                                                                                   **Page(s)**

*Koppel v. 4987 Corp.*, 167 F.3d 125 (2d Cir. 1999)…………………………….………...4

*Kriegel v. Donelli*, 2014 U.S. Dist. LEXIS 90086 (S.D.N.Y. June 30, 2014)……………..…16, 18

*Labajo v.Best Buy Stores, L.P.*, 478 F. Supp. 2d 523 (S.D.N.Y. 2007)……………………...………4


*Lerner v. Fleet Bank,* N.A., 459 F.3d 273 (2d Cir. 2006)……………………………………...……18

*Maik Lankau v. Luxoft Holding, Inc.*,
    2017 U.S. Dist. LEXIS 106172 (S.D.N.Y. July 10, 2017)………………………………16

*Nat'l Fin. Co. v. Uh*, 279 A.D.2d 374 (1st Dept. 2001)……………………………...………………6

*Neuman v. Pike*, 591 F.2d 191 (2d Cir. 1979)……………………………………...…………21

*Omaha Indemn. Co. v. Johnson & Towers, Inc.*,
    599 F. Supp. 215 (S.D.N.Y. 1984)……………………………………………………12

*Orix Credit Alliance, Inc. v. Bell Realty, Inc.*,
    1995 U.S. Dist. LEXIS 12255 (S.D.N.Y. July 27, 1995)………………………………..20

*Phillips v. G.M. LLC (In re Motors Liquidation Co.)*,
    689 F. App'x 95 (2d Cir. 2017)……………………………………………………………….6

*Pickwick Communications v. Weinberg*,
    1994 U.S. Dist. LEXIS 15680 (S.D.N.Y. Nov. 1, 1994, 91 Civ. 1642 (AGS))…………12

*Red Ball Interior Demolition Corp., v. Palmadessa*,
    173 F.3d 481 (2d Cir. 1999)………………………………………………………………22

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 427 (2d Cir. 2004)…………………………...………8, 23

*Reid v IBM*, 1997 U.S. Dist. LEXIS 8905
    (S.D.N.Y. June 24, 1997, 95 Civ. 1755 (MBM))…………………………………..………21

*Roberts v. Babkiewicz*, 582 F.3d 418 (2d Cir. 2009)………………………………………...………4

*Rubinstein v. Clark & Green, Inc.*, 395 F. App'x, 788 (2d Cir. 2010)…………………….………11

**Cases**                                                                      **Page(s)**

*Schoninger v Green*, 763 F App'x 1 (2d Cir 2019) ………………………..…………………25

*Sellers v. M.C. Floor Crafters, Inc*., 842 F.2d 639 (2d Cir. 1988)………………….……………4

*Silverberg v. SML Acquisition LLC*, 2017 U.S. Dist. LEXIS 27204
    (S.D.N.Y. Feb. 27, 2017, No. 15-CV-7129 (CS)……………………………...……………21

*Stewart M. Muller Constr. Co. v. N.Y. Tel. Co.*, 40 N.Y. 2d 955 (1976)…………….…...…………21

*VKK Corp. v. National Football League*, 244 F.3d 114 (2d Cir. 2001)………………………9, 20

*Worldwide Home Prods. v Bed Bath & Beyond, Inc*.,
    2013 U.S. Dist. LEXIS 9146(S.D.N.Y. Jan. 22, 2013)……………………………..…………14

*Telecom Intl. Am., Ltd. v AT&T Corp*., 280 F3d 175 (2d Cir 2001)…………………………17, 18

*Transnat'l Mgmt. Sys. II, LLC v. Carcione*,
    2016 U.S. Dist. LEXIS 167591 (S.D.N.Y. Dec. 5, 2016)………………………………..……16

*United States v. Bank of N.Y.*, 14 F.3d 756 (2d Cir. 1994)…………………………………….8, 24

*United States v. Sforza*, 326 F.3d 107 (2d Cir. 2003)……………………………………………23

*Wall v. CSC Transp., Inc*., 471 F.3d. 410 (2d Cir. 2006)…………………………...……………17

*Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc.
    v. Hohri*, 953 F. Supp. 557 (S.D.N.Y. 1997)…………………………………...……………8

*Zam & Zam Super Mkt. , LLC v. Ignite Payments*, LLC,
    U.S. Dist. LEXIS 233701 (E.D.N.Y. Oct 31 2017, No. CV 16-6370 (SJF)………..……13


**Rules**

Fed. R. Civ. P. 9(b)…………………………………………………………3, 5, 16, 17,18, 19, 25

Fed. R. Civ. P. 12(b)(6)…………………………………………………………………………4

Fed. R. Civ. P. 12(c)…………………………………………………………………………4

Fed R. Civ. P. 12(f)…………………………..……………………………………..5, 7, 25

Fed. R. Civ. P. 11……………………………...…………………………………………..7

Fed. R. Civ. P. 15…………………………………...…………………………………..3, 7

N.Y. Limited Liability Company § 802(a)………………..…………………………………4

**Treatises**

N.Y. Jur. 2d Contracts § 29……………………………………………………………………23

Plaintiff Easy Financial, LLC respectfully submits this Memorandum of Law in support of its motion (i) to dismiss defendant Churchill MRA Funding I, LLC's amended counterclaims and strike its second amended counterclaims, (ii) to strike certain affirmative defenses and (iii) for entry of judgment in its favor on the pleadings.

## PRELIMINARY STATEMENT

The core of this case involves a written settlement agreement ("<u>Settlement Agreement</u>") that Easy Financial and Churchill entered into on January 26, 2023. The Settlement Agreement, which was performed by the parties, resolved all of their disputes and financial obligations under an agreement called the Master Repurchase Agreement and Securities Contract (the "<u>MRA</u>"), which was a credit facility that the parties entered into as of August 10, 2020. Under the MRA, Easy Financial made secured real estate loans, as mortgagee, to various borrowers. During the term of the MRA, Easy Financial made and serviced all 139 loans made thereunder. And, at its own discretion, provided borrowers with loan extensions, wavier of late fees, and various loan modifications without the requirement of Churchill's consent. At the time of the Settlement Agreement was made, there were 33 loans outstanding subject to the MRA.

The Settlement Agreement provided that Easy Financial was required to pay Churchill a settlement amount of $29,500,000 (the "<u>Settlement Amount</u>") no later than December 31, 2023. If Easy Financial failed to timely pay the full Settlement Amount, then it would owe Churchill the full balance all 33 loans outstanding under the MRA, or approximately $33,000,000.00.

Easy Financial timely paid the full Settlement Amount by February 29, 2023, which was accomplished through the sale of 25 real estate loans to Churchill for the agreed upon value of

$29,799,093.76 (i.e., $299,093.76 in excess of the Settlement Amount.)[1]  As such, under the

terms of the Settlement Agreement, the parties fully released each other of all claims.[2]

Now, Churchill not only refuses to return the $299,093.76 in excess funds that it received

from Easy Financial, but it also wrongfully disavows the Settlement Agreement and the general

releases exchanged therein.  As a result, Easy Financial filed this action on April 7, 2023.[3]

Notably, Churchill failed to timely file an answer in response to Easy Financial's First

Amended Complaint ("FAC").[4]  Instead, non-party Sunrise NPL, LLC ("Sunrise") purported to

answer the FAC.  It also interposed counterclaims against Easy Financial and third-party claims

against non-party Benjamin Donel. Churchill unsuccessfully argued that Sunrise's pleading was

proper because Churchill's rights and interests under the MRA were assigned to Sunrise.  This

Court, however, ordered Sunrise's purported pleadings stricken.  (*See* ECF No. 35.**)**  Churchill

eventually answered the FAC. (ECF No.36.)  Disturbingly despite declaring that it had assigned

---

[1]  Churchill concedes that the Settlement Amount of $29,500,000.00 was $3,500,000.00 less the outstanding balance under the MRA at the time. (ECF No. 44-1, ¶ 9.)

[2]  The Settlement Agreement includes the following release: "Upon payment of the full settlement amount, $29.5 million as outlined above, the parties mutually agree to fully and completely release, discharge, forgive and compromise each other from any and all claims, liabilities or damages - whether presently known or unknown. This release extends to each parties' officers, directors, shareholders, members, affiliates, subsidiaries, and/or principles." (ECF No. 48-5.)

[3]  Easy Financial's Third Amended Complaint (the "Complaint" or "TAC"), dated August 23, 2023, is now the operative compliant.  It asserts causes of action for breach of contract, account stated, unjust enrichment, promissory estoppel, defamation, and injunctive pertaining to the Settlement Agreement, including a declaration that it has been fully performed, and that the mutual releases exchanged therein are effective and enforceable. The Complaint also seeks an order requiring Churchill to remove or discharge the encumbrances that it wrongfully filed on certain properties in New Jersey, California and Florida because, given the terms of the Settlement Agreement and the mutual releases exchanged therein, the loans made with respect to such properties are no longer subject to the MRA. (ECF No. 51.)

[4]  The FAC (ECF No. 10) was initially served on Churchill on April 19, 2023.

all of its rights and interests under the MRA to Sunrise, Churchill's pleading also included several counterclaims against Easy Financial based upon claims that are related to the MRA.[5]

Churchill's amended counterclaims are untenable and must be dismissed for several reasons, including the following: *first*, Churchill does not have standing; *second*, its declaratory judgment counterclaim regarding the termination of the MRA seeks relief for exactly the same claims enumerated in the underlying action; *third*, its quasi-contract and tort counterclaims (i.e., the third, fourth, fifth and seventh claims) are duplicative of its counterclaim for breach of the MRA; *fourth*, the fraud-based counterclaims (i.e., the sixth and seventh claims) do not satisfy the *Iqbal/Twombly* pleading standards, let alone the heighted pleading requirements of Rule 9(b); and, further, the sixth claim really is a breach of the Settlement Agreement claim dressed in fraud clothing; *fifth,* its declaratory judgment claim based upon economic duress duplicates Churchill's sixth affirmative defense and fails as a matter of law because Churchill can prove no set of facts in support of this claim which would entitle it to any relief; and *sixth*, the declaratory judgment claim based upon no meeting of the minds is really an affirmative defense that fails because the intent of the parties can easily be ascertained from the terms of the Settlement Agreement and their manifestations of mutual intent.[6]

## ARGUMENT

---

[5]  Eight days later, on July 25, 2023, Churchill filed amended counterclaims as of right under Rule 15. (ECF No. 37.)  Churchill also asserted third-party claims against Benjamin Donel, who is a non-party to the MRA and the Settlement Agreement.

[6]  For the avoidance of doubt, the instant motion seeks to dismiss Churchill's counterclaims that are contained in its pleading filed on July 25, 2023 (ECF No. 37 ("Answer to First Amended Complaint, Affirmative Defenses and Amended Counterclaims and Third-Party Complaint") and the applicable affirmative defenses included in its pleading filed on September 7, 2023 (ECF No. 51 ("Answer, Affirmative Defenses and Counterclaims to Plaintiff's Third Amended Complaint and Third-Party Complaint").  As discussed below, Churchill's second amended counterclaims, which are contained in ECF No. 51, were improperly filed and should be stricken.

## I.     <u>Standard of Review</u>

Rule 12(c) of the Federal Rules of Civil Procedure states: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc*., 842 F.2d 639, 642 (2d Cir. 1988). Courts apply the same standard applicable to a motion under Rule 12(b)(6).

To survive such a motion to dismiss, a plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). When considering a motion to dismiss under either Rule 12(b)(6) or Rule 12(c), a Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999).  However, where a plaintiff's conclusory allegations are clearly contradicted by documentary evidence incorporated into the pleadings by reference the court is not required to accept them. *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007).

Moreover, the standard applicable to documents a court may consider in ruling on a motion for judgment on the pleadings under Rule 12(c) is slightly broader, allowing consideration not only of the nonmoving party's pleading, but also that of the moving party.  In deciding a motion to dismiss under Rule 12(c), the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice. *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009); *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (court may review documents integral to the complaint upon which plaintiff relied in drafting the pleadings, as well as any documents attached to the pleadings as exhibits).

Rule 12(f) also provides that, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed R. Civ. P. 12(f). According to the Second Circuit, "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense." *See GEOMC Co. v. Calmare Therapeutics*, 918 F.3d 92, 98 (2d Cir. 2019). Thus, a party asserting affirmative defenses "need[s] to support these defenses with some factual allegations to make them plausible." *Id*. at 99 (affirming district court's decision to strike affirmative defenses because defendant's answer "lacked any indication" of the facts that would render the defenses plausible).[7]

## II.     The Counterclaims Must be Dismissed Because Churchill Lacks Standing

Churchill lacks standing to pursue its counterclaims for the following reasons: (i) Churchill has no interests in the MRA and the Settlement Agreement because they were assigned to Sunrise; (ii) the Settlement Agreement and the general releases exchanged therein preclude Churchill from pursuing the counterclaims; and (iii) Churchill has failed to comply with New York Limited Liability Law §802(a).

### A.     Churchill Assigned all of its Rights to Sunrise

Churchill has repeatedly and unequivocally declared throughout this litigation that all of its purported claims against Easy Financial have been assigned to Sunrise and that it no longer

---

[7]     In addition, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires that the complaint (1) detail the statements or omissions that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements or omissions were made, and (4) explain why the statements or omissions are fraudulent. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). While "[m]alice, intent, knowledge, and other conditions of a person's mind may be averred generally," Fed. R. Civ. 9(b), a plaintiff nevertheless is required to "allege facts that give rise to a strong inference of fraudulent intent." *Id*.  Such intent may be pleaded "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id*.

possesses any legal interests in any claims it may have under the MRA and the Settlement Agreement. Therefore, the counterclaims must be dismissed because Churchill does not have standing. "'An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor.'" *Phillips v. G.M. LLC (In re Motors Liquidation Co.)*.'" 689 F. App'x 95, 96 (2d Cir. 2017) (summary order) (quoting *Aaron Ferer & Sons Ltd., v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984)) (other citation omitted); *see also House of Eur. Funding Ltd. v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 49894, at *47 (S.D.N.Y. March 31, 2014) ("A party that has assigned away its rights under a contract lacks standing to sue for breach of contract.") (citing *Nat'l Fin. Co. v. Uh*, 279 A.D.2d 374 (1st Dept. 2001) ("Having assigned the note, [plaintiff] was no longer the real party in interest with respect to an action upon the instrument and retained no right to pursue a claim against defendant.").

Indeed, as mentioned above, it was non-party Sunrise, and not Churchill, that initially filed counterclaims against Easy Financial in this action. (*See, e.g.,* ECF Nos 24 & 27.) Easy Financial objected to the non-party pleadings. (ECF No 33.) In support of Sunrise's non-party pleading, Churchill argued that "[o]n or about March 29, 2023, Churchill assigned all of its rights and interests to Sunrise, with respect to the Master Repurchase Agreement. . . As a result, Sunrise, as Churchill's successor in interest, assumed all liability and claims related to any agreements by and between Churchill and Easy Financial." (ECF No. 34.) Churchill made a similar contention to the Clerk of the Court in response to Easy Financial's earlier request for a certificate of default because Churchill failed to answer the FAC. (ECF No. 30 ("As a result of Churchill's assignment of all rights and interest to Sunrise, Sunrise was the proper party Easy

Financial should have sued. Sunrise, therefore, filed an answer and asserted affirmative defenses, counterclaims and third-party claims, as successor in interest to Churchill.")).

Churchill is keenly aware of the fact that it has no standing to sue Easy Financial. This issue was expressly raised by Easy Financial's counsel at the pre-motion hearing before Judge Woods on June 12, 2023 (which was requested by Easy Financial to discuss the impermissibility of the pleadings filed by Sunrise). (*See* ECF 38, 10:1-4 ("…Churchill has no counterclaims. They readily admit that they have assigned them to Sunrise.").) At the time, Churchill's counsel did not disagree or otherwise object to this conclusion.

Nevertheless, on July 17, 2023, after Sunrise's pleading was stricken by this Court, Churchill filed a pleading that included counterclaims that are identical to the improper ones filed by Sunrise. (*Compare* ECF Nos. 27 with ECF No. 36). Eight days later, on July 25, 2023, Churchill amended its counterclaims, as a matter of course pursuant to Rule 15 (and which were referred to in the caption as "Amended Counterclaims") (*See* ECF 36.).

In light of the foregoing, on July 28, 2023, Easy Financial's counsel sent a "safe harbor" letter to Churchill's counsel pursuant to Rule 11. (ECF No. 50-1.) Churchill's counsel was provided an ample opportunity to withdraw the amended counterclaims because Churchill obviously does not have standing to assert them. Instead of withdrawing such counterclaims, Churchill's counsel defiantly doubled down on the untenable position that Churchill somehow possesses the right to assert the claims that it has admittedly assigned to Sunrise by filing second amended counterclaims.[8] Accordingly, concurrent with this motion, Easy Financial is filing a motion for sanctions.

---

[8]  More specifically, on September 7, 2023, Churchill improperly sought to amend its amended counterclaims with its second amended counterclaims (which were referred to in the caption as "Counterclaims" instead of "Second Amended Counterclaims"). (ECF No. 51.) The counterclaims in ECF No. 51 should also be stricken pursuant to Rule 12(f) because Churchill did not move for leave to

For the reasons discussed above, the counterclaims should be dismissed because Churchill lacks standing to prosecute them.

### B. The Release Churchill Provided to Easy Financial in the Settlement Agreement Completely Precludes the Counterclaims

The written Settlement Agreement in this action, which includes broad general releases, warrants the dismissal of the counterclaims and entry of judgment in favor of Easy Financial.[9]

The Second Circuit applies contract law in determining the enforceability of settlement agreements. *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). A settlement agreement is enforceable if there is an "an offer, acceptance, consideration, mutual assent and intend to be bound. *Register.com v. Verio, Inc*., 356 F.3d 393, 427 (2d Cir. 2004) (internal quotations marks omitted). The parties must agree "on all essential terms," *Opals on Ice Lingerie v. Bodylines Inc*., 320 F.3d 362, 372 (2d Cir. 2003) (internal quotations omitted), which are "all issues perceived to require negotiation." *Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2004) (internal quotation marks omitted).

"Settlement agreements are strongly favored in New York and may not be lightly cast aside. Afterthought or change of mind are not sufficient to justify rejecting a settlement. A court may relieve a party of the consequences of a settlement agreement 'only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident.'" *Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) (citations omitted); *see also United States v. Bank of N.Y.*, 14 F.3d 756, 759

---

amend before their filing. In any event, such an amendment would be futile given the points raised in this motion.

[9]   The Settlement Agreement, which is "integral" to both parties' claims in this action, is attached as Exhibit 5 to Easy Financial's Complaint. (*See* ECF No. 48-5.)

.

(2nd Cir. 1994) ("[w]hen a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a choice simply because his assessment of the consequences was incorrect.").

Similarly, releases are given considerable deference and are not lightly repudiated. *Consorico Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 189 (S.D.N.Y. 2008) ("New York law also recognizes that 'a clear and unambiguous release…should be enforced according to its terms.'") (alternation in original) (quoting *Booth v. 3669 Delaware*, 92 N.Y. 2d 934, 935 (1998). Moreover, "[w]here sophisticated business entities execute mutual releases in the course of arm's length negotiations, courts are even more scrupulous in holding the parties to their bargain." *2 Broadway LLC v. Credit Suisse First Boston Mtge. Capital LLC*, 2001 U.S. Dist. LEXIS 4875, at *19 (S.D.N.Y. Apr. 20, 2001, No. 00 Civ. 5773) (citing *VKK Corp. v. National Football League*, 244 F.3d 114, 123 (2nd Cir. 2001). Significantly, a valid release in a settlement agreement constitutes "a complete bar to an action on a claim which is the subject of the release." *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n,* 655 F.3d 136, 142 (2d Cir. 2011) (citation omitted); *Pampillonia v. RJR Nabisco, Inc.* 138 F.3d 459, 463 (2d Cir. 1998) (a release knowingly and voluntarily entered into that clearly waives a right to pursue a cause of action is binding).

In the case at bar, the emails comprising the Settlement Agreement contained the agreed upon material terms, which were negotiated by two sophisticated parties. To be sure, the emails, which included the parties' respective counsel, unequivocally detail a comprehensive resolution of the parties' dispute under the MRA:

> "This email is to confirm the Settlement Agreement between Easy Financial, LLC ('Easy') and Churchill MRA Funding I, LLC ('Churchill') related to the present dispute between the parties over loans made and funds advanced pursuant to the Master Repurchase Agreement and Securities Contract, dated August 10, 2020 ("The MRASC Agreement"). This email will serve as the Settlement Agreement for this dispute. Sorabh Maheshwari has full authority to bind Churchill to this Agreement, and Benjamin Donel

has full authority to bind Easy to this Agreement. By replying to this email, and stating "Agreed and Accepted" - by Sorabh Maheshwari and Benjamin Donel - this Agreement will be confirmed and supersede any and all prior agreements, written or oral, related to The MRASC Agreement and all disputes related thereto"

(ECF No. 48-5 at p.27.)

The emails comprising the Settlement Agreement are summarized as follows:

1) Easy Financial agreed pay Churchill the Settlement Amount of $29.5 million by December 31, 2023, "in full satisfaction of all amounts due under the [MRA]" in accordance with the terms below.

2) Easy agreed to transfer and sell the "White" loans (as designated in an attached Spreadsheet (*Id.* at p. 4-6)) totaling approximately $16.1 million to Churchill, crediting this amount towards the Settlement Amount (and leaving an unpaid balance of $13.4 million).

3) Easy agreed to repay the remaining Settlement Amount of approximately $13.4 million by December 31, 2023, which amount would be collateralized the "Red" loans listed on the Spreadsheet.

4) Easy agreed to pay monthly interest on the outstanding Settlement Amount (approximately $13.4 million) until fully repaid, at the current effective interest rate.

5) The parties agreed to accept the figures presented in the attached Spreadsheet, subject to reasonable accounting.

6) Upon payment of the Settlement Amount by Easy Financial, the parties mutually agreed "to fully and completely release, discharge, forgive, and compromise each other from all claims, liabilities or damages – whether presently known or unknown. The release extends to the parties' officers, directors, shareholders, members, affiliates, subsidiaries, and/or principles."

7) In the event Easy Financial failed to pay the $29.5 million Settlement Amount by December 31, 2023, it would be obligated to pay the full amount outstanding under the MRA, or approximately $33 million.

8) The parties agreed to cooperate with each other to effectuate the Settlement Agreement.

(*See* ECF No. 48-5 at pp.23-36.)

In addition to containing all material terms, the foregoing clearly evinces a mutual assent and intent to be bound by the emails. And for further certainty, Easy Financial's counsel, Jeffre Lowe, repeated and re-confirmed the solemnity of this point in other portions of the emails, e.g.,

**"Please respond 'Agreed and Accepted' to confirm acceptance of the foregoing terms and conditions"** (bold in original) (*Id*. at p. 29), and "With this addition, do the parties agree to the foregoing. Please write 'Agreed and Accepted' if you agree." (*Id*. at p. 24).

Under these circumstances, if each party in fact confirmed that it "Agreed and Accepted" the terms and conditions in the emails, it cannot plausibly be denied that there is a binding and enforceable Settlement Agreement between them. And that is exactly what happened here. On January 26, 2023, Sarabh Maheshwari, on behalf of Churchill, expressly manifested Churchill's intent to be bound by emailing "Agreed and Accepted" at 2:28 p.m. (*Id*. pp. 23-29). Approximately 30 minutes later, at 2:59 p.m., Benjamin Donel, on behalf of Easy Financial, expressly manifested Easy Financial's intent to be bound by emailing "Agreed and Accepted," thereby confirming mutual assent of the parties (*Id*. pp. 30-36.

It is therefore incontestable that the parties intended to be bound by the terms of the Settlement Agreement. *Rubinstein v. Clark & Green, Inc*., 395 F. App'x, 788 (2d Cir. 2010) ("an exchange of emails may constitute a binding agreement under New York law"); *Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC*, U.S. Dist. LEXIS, 11130 (S.D.N.Y. June 9, 2005) (contract formed when party sent email to "formally accept your offer" in response to email containing "final settlement counter-proposal").

Accordingly, Churchill's counterclaims must be dismissed by virtue of the mutual releases that were exchanged as part of the Settlement Agreement, which became effective upon the full and timely payment of the entire Settlement Amount of $29,500,000.00.[10] As discussed

---

[10] It is incontrovertible that that Easy Financial sold 25 mortgage loans to Churchill at an agreed upon value of $29,799,093.76 between the period of January 27, 2023 and February 28, 2023 (well before the December 31, 2023 deadline). (*See* ECF No. 48-7 ("Please see the attached spreadsheet. Easy Financial has paid the agreed-$29.5 million. Congratulations all! This would conclude all dealings under the Master Repurchase Agreement and Securities Contract, dated August 10, 2020. There may be some

above, the scope of the releases at issue is broad and includes all "known and unknown" claims "related to the [MRA] and all disputes related thereto." *See Pickwick Communications v. Weinberg*, 1994 U.S. Dist. LEXIS 15680, at *12 (S.D.N.Y. Nov. 1, 1994, 91 Civ. 1642 (AGS)) ("[A] broad release…bars all claims, irrespective of whether these claims have ripened at the time of the release's execution or whether the releasor was even aware of the at the time of execution."); *Omaha Indemn. Co. v. Johnson & Towers, Inc.,* 599 F. Supp. 215, 221 (S.D.N.Y. 1984) (finding that a release bars all of plaintiff's claims existing at the time of the release, both known and unknown); *2 Broadway LLC*, 2001 U.S. Dist. LEXIS 4875, at *18 ("It is appropriate to grant a motion to dismiss on the on the basis of a binding release").

Here, Churchill knowingly and voluntarily entered into the Settlement Agreement with releases waiving all claims, known and unknown, relating to the MRA. Therefore, Churchill's counterclaims are barred and must be dismissed.

### C.     Churchill is not Authorized to Maintain the Counterclaims

Churchill, a Delaware limited liability company, does not possess a certificate of authority to do business in New York. Accordingly, it is precluded from maintaining it counterclaims. *See* N.Y. Limited Liability Company § 802(a).

## III.     Most of Churchill's Counterclaims Should Also be Dismissed on Other Grounds

### A.     Churchill's Second Counterclaim for Declaratory Relief

---

housekeeping matter[s] to attend to, but the settlement agreement has been fully performed. Our records show that Churchill owes a final balance of $299,093.76…"). Additionally, Churchill also previously confirmed receipt of $29,799,093.78 through loan sales by Easy Financial shown in five (5) Spreadsheets it prepared to confirm a reduction in the amount outstanding under the MRA through its purchase of the 25 loans: (i) $14,817,119.59; (ii) $2,833,302.40; (iii) $7,724,069.17; (iv) $4,100,000.00; and (v) $324,602.60. (*See* ECF No. 48-6; *see also* ECF No. 51, ¶49 (admitting that Churchill's affiliate took possession of loans totaling $29,799,093.76, thereby reducing the amount outstanding under the MRA).

Churchill's second counterclaim seeking declaratory judgment that the MRA was terminated must be dismissed. As a threshold matter, the Declaratory Judgment Act "provides a remedy, not a cause of action…and a court 'may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief.'" *Zam & Zam Super Mkt. , LLC v. Ignite Payments*, LLC, U.S. Dist. LEXIS 233701 (E.D.N.Y. Oct 31 2017, No. CV 16-6370 (SJF) (AYS), *aff'd* 736 Fed. Appx. 274 (2d Cir. 2018). Here, Churchill has no affirmative claims as they have all been assigned to Sunrise.[11]

There are other reasons the second counterclaim must fail. *First*, "[a]" court will decline to exercise its discretion to entertain a request for declaratory relief where such relief would serve 'no useful purpose.'" *Intellectual Capital Partner v Inst. Credit Partners LLC*, 2009 U.S. Dist. LEXIS 58768, at *16 (S.D.N.Y. July 8, 2009) (finding that declaratory relief would serve no useful purpose as the legal issues will be resolved by the litigation); *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Churchill's declaratory judgment claim adds nothing to this case because the controversy has ripened and the uncertainty and anticipation of litigation are alleviated by Easy Financials' claims; *see also Intercon Sols., Inc. v Basel Action Network*, 969 F. Supp. 2d 1026 (N.D. Ill. 2013) ("Thus courts routinely dismiss counterclaims that seek to generate an independent piece of litigation out of issues that are already before the court; this includes counterclaims that merely restate an affirmative defense, as well as those which simply seek the opposite effect of the complaint." (collecting cases).

*Second*, a redundant counterclaim may be dismissed "[w]hen a counterclaim is merely the 'mirror image' of an opposing party's claim and the counterclaim and serves no independent

---

[11]  For this reason, too, Churchill's eighth and ninth counterclaims seeking declaratory relief should also be dismissed.

purpose." *Worldwide Home Prods. v Bed Bath & Beyond, Inc.,* 2013 U.S. Dist. LEXIS 9146, at *7 (S.D.N.Y. Jan. 22, 2013)).  Here, Churchill's declaratory judgment claim is entirely subsumed in all of Easy Financial's claims and particularly in Count V of the Complaint.

*Third*, there is no justiciable controversy regarding Churchill's second counterclaim inasmuch as Easy Financial has repeatedly asserted that all dealings between the parties under MRA are concluded.  (ECF No. 48, ¶¶ 61, 66, 68 & 72.)  In other words, the parties agree that the MRA has been terminated.

### B. Churchill's Third Counterclaim for Conversion

Churchill's third counterclaim, which is based on Easy Financial' s purported misconduct with regard to the mortgage loans under the MRA, fails because a claim for conversion "cannot be predicated on a mere breach of contract." *Jeffers v. Am. Univ. of Antigua*, 125 A.D.3d 440, 443 (1st Dept. 2015). Rather, in order "[f]or a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000); *see also Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 305 A.D.2d 268, 269 (1st Dept. 2003) (rejecting conversion claim where it "alleged no independent facts sufficient to give rise to tort liability" beyond those asserted in connection with contract claim).

Here, Churchill's conversion claim is indistinguishable from, and is exclusively premised on, Easy Financial's purported breach of the MRA.  Indeed, in support of its breach of contract claim, Churchill alleges that "the scheme advanced and executed by Donel and Easy Financial [i.e., assigning and transferring mortgages to third parties] breaches each one of these representations, warranties and covenants [in the MRA]" (*See* ECF No 37, ¶ 58(c).) Moreover, there is no allegation of any wrongful act by Easy Financial that is separately actionable.

Finally, not only has Churchill failed to identify the specific property that it claims was converted, it also fails to allege that Easy Financial currently has dominion control over such property. *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 206 (S.D.N.Y. 2008) ("To establish a claim of conversion, a plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question . . . to the exclusion of the plaintiff[']s rights." (quotation marks omitted)). Here, Churchill admits that Easy Financial does not have dominion and control the unidentified properties that it complains about. *See, e.g.,* ECF No. 37, ¶ 38. Churchill's conversion counterclaim should therefore be dismissed.

## C.    Churchill's Fourth Counterclaim for Unjust Enrichment

Unjust enrichment "lies as a quasi-contract claim" that "contemplates 'an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.'" *Georgia Malone & Co. v Reider*, 19 N.Y.2d 511, 516 (2012) (citation omitted).  "It is only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Coresello v. Verizon N.Y., Inc.*, 18 N.Y. 777, 790 (2012).  A plaintiff may not recover under an unjust enrichment claim "where an enforceable contract governs the same subject matter." *Goldberg v Pace Univ.*, 535 F. Supp. 3d 180, 198 (S.D.N.Y. 2021).  Moreover, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id* at 199.  Under these circumstances, Churchill's unjust enrichment counterclaim must be dismissed because it arises out of and is governed by the MRA (which the parties agree is an enforceable contract), and it duplicates Churchill's breach of contract cause of action (i.e., the first counterclaim).

### D.  Churchill's Fifth Counterclaim for Wrongful Misappropriation

Churchill's wrongful misappropriation counterclaim must be dismissed for the same reasons as the conversion and unjust enrichment counterclaims.  It alleges no independent facts sufficient to give rise to tort liability beyond those asserted in connection with the contract counterclaim, and it is nothing more than a re-packaged version of the conversion counterclaim.

### E.      Churchill's Fraud Related Counterclaims

Desperate to avoid the consequences of the bargain it struck with Easy Financial with respect to the Settlement Agreement, Churchill has contrived a fraudulent inducement claim (i.e., the sixth counterclaim) and a fraud counterclaim (i.e., the seventh counterclaim), neither of which is sustainable as a matter of law.

To establish a valid defense of fraudulent inducement, Churchill must establish: (1) a misrepresentation of an existing material fact; (2) made with knowledge of its falsity; and (3) with an intent to defraud; (4) that induces reasonable reliance; and (5) damages the defendant." *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 474 (S.D.N.Y) (citations omitted).  Notably, "[f]raudulent inducement involves a misrepresentation of <u>present</u> fact, not of future intent, collateral to a contract and used to induce the defrauded party to sign the contract.'" *Kriegel v. Donelli*, 2014 U.S. Dist. LEXIS 90086 (S.D.N.Y. June 30, 2014) (emphasis in original) (internal quotation marks and citation omitted).

Furthermore, a fraud in the inducement claim is also subject to Rule 9(b)'s requirement that "the circumstances constituting fraud" be alleged with "particularity." *Maik Lankau v. Luxoft Holding, Inc.*, 2017 U.S. Dist. LEXIS 106172, at *9 (S.D.N.Y. July 10, 2017); *see supra* n.7; *Transnat'l Mgmt. Sys. II, LLC v. Carcione*, 2016 U.S. Dist. LEXIS 167591, at *27 (S.D.N.Y. Dec. 5, 2016) ("Failure to do so requires dismissal of the complaint.").

Critically, a fraud claim that "is a simple breach of contract claim in tort clothing" is not cognizable. *Telecom Intl. Am., Ltd. v AT&T Corp.*, 280 F3d 175 (2d Cir 2001). Indeed, a fraudulent inducement allegation "may not be used as a means of restating, in substance, a claim for breach of contract." *Wall v. CSC Transp., Inc.*, 471 F.3d. 410, 416 (2d Cir. 2006). As such, to maintain a fraudulent inducement claim, a plaintiff must: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone v Recovery Credit Servs.*, 98 F3d 13, 20 (2d Cir 1996) (citation omitted).

Here, Churchill has failed to plead the necessary elements of fraud in the inducement, much less with the specificity necessary to meet Rule 9(b)'s heightened pleading requirements. In fact, Churchill's fraud in the inducement counterclaim is absurd on its face. Relying entirely on the emails constituting the Settlement Agreement, Churchill alleges that it was fraudulently induced into entering into the Settlement Agreement because Easy Financial promised to pledge seven (7) loans as security for the payment of the unpaid portion of the Settlement Amount. According to Churchill, at the time, Easy Financial was aware that two of the loans (i.e., the Cook County Loans) could not be pledged as collateral because they were assigned to another entity. Churchill also states in conclusory terms that Easy Financial did not have the authority to pledge the loans as contemplated under the Settlement Agreement. Finally, Churchill states in conclusory terms that it was damaged in the amount of $3,500,000.00. (See ECF No.36, ¶¶97-105.)

Based on the foregoing, it is clear that Churchill has not pled any misrepresentation by Easy Financial. That the Cook County loans were transferred to a different entity, just like each of the other five (5) loans that were transferred to other entities and were pledged to Churchill as

security for the payment of the Settlement Amount, does not mean that the Cook Country could not be pledged as security, as Churchill asserts. Simply put, Churchill has failed to identify with particularity a single false statement by Easy Financial.[12]

Moreover, Rule 9(b) requires that Churchill "allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank,* N.A., 459 F.3d 273, 290 (2nd Cir. 2006). Such intent may be pleaded "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Eternity Global Master Fund Ltd.*, 375 F.3d at 187 (2nd Cir. 2004). Churchill has made no such allegations in the counterclaim.

Churchill also makes no allegation that Easy Financial owed a duty to Churchill separate from the Settlement Agreement. Instead, Churchill alleges "Donel's and Easy Financial's deceptive actions with respect to the Cook County Loans evidence that Easy Financial…did not intend to comply with the terms of the settlement agreement." (ECF No. 37, ¶ 54). However, "a conclusory allegation of intent to breach at the time of execution will not do." *Capital Mgt. Select Fund v. Bennet*, 680 F.3d 214, 226 (2d Cir. 2012). And, like here, "where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Telecom Int'l Am. Ltd.* 280 F.3d at 196 (2nd Cir. 2001); *see also Kriegel v. Donelli*,

---

[12] Moreover, Churchill intentionally conceals the fact that it is the actual owner of Cook County Loans. (*See* ECF No. 48-6 at pp. 7-8 (showing the Cook County Loans were included in the 25 loans that were purchased by Churchill under the terms of the Settlement Agreement). As such, in its opposition, Churchill must concede that Easy Financial has worked with Churchill to arrange for the Cook County loans to be assigned to Churchill – something the Settlement Agreement expressly provides for. Simply put, Churchill's complaints about the Cook County Loans are entirely spurious (and likely sanctionable) in light of the actual facts.

2014 U.S. Dis. LEXIS 90086, at *42-43 (S.D.N.Y. June 30, 2014) (finding plaintiff's fraud claim duplicative of breach of contract claim where he made no allegation that defendant owed duty other than as set forth in contract and the alleged misrepresentation was not collateral to the contract).

The absurdity of Churchill's position in alleging that Easy Financial did not intend to comply with the terms of the Settlement Agreement is further highlighted by the fact that Easy Financial paid Churchill $29,799,093.76 (i.e., $299,093.76 in excess of the Settlement Amount) through the sale of 25 loans (including the Cook County Loans) by February 28, 2023, well in advance of the December 31, 2023 deadline. Thus, Churchill suffered no damages, let along special damages, which are required for a fraudulent inducement claim.

With respect to Churchill's fraud counterclaim, it is nothing more than a repackaged version of its fraudulent inducement counterclaim and should also be dismissed. Churchill's allegations do not rise to the level of particularity required by Rule 9(b), as there are no allegations of any false statements. Moreover, no facts have been alleged that give rise to a strong inference of fraudulent intent. Rather, in reality, the fraud counterclaim is simply a contract claim dressed up as fraud. The law, however, is clear that when a fraud claim is simply a recast contract claim, it is subject to dismissal. *Bridgestone/Firestone,* 98 F.3d 13, 20 (2d Cir. 1996). Here, no facts are alleged supportive of either a legal duty separate from the Settlement Agreement or a fraudulent misrepresentation extraneous to the contract. Indeed, the entire premise of the fraud counterclaim, like the fraudulent inducement counterclaim, is that the alleged misrepresentation at issue, i.e., that the Cook County Loans would be pledged as collateral to secure the payment of the Settlement Amount, is expressly contained in the Settlement Agreement itself.

Accordingly, the fraudulent inducement and fraud counterclaims should be dismissed.

**F.    Eighth Counterclaim for Declaratory Judgment Based Upon Economic Distress**

The Second Circuit has stated that a release provided by a sophisticated commercial actor may be voided on grounds of economic duress only in "extreme and extraordinary cases." *VKK Corp. v. National Football League*, 244 F.3d 114, 123 (2nd Cir. 2001). "A party seeking to avoid a contract because of economic duress bears a heavy burden." *Orix Credit Alliance, Inc. v. Bell Realty, Inc.*, 1995 U.S. Dist. LEXIS 12255 (S.D.N.Y. July 27, 2995) (quoting *Int'l Halliwell Mines v. Continental Copper and Steel Indus.*, 544 F.2d 105, 108 (2d Cir. 1976).

Churchill's eighth counterclaim seeks to avoid the consequences of the Settlement Agreement and the releases Churchill provided therein on the grounds of economic duress. (ECF No. 37 ¶¶ 114-122.)  Churchill alleges in conclusory terms that Benjamin Donel threatened to covert $40 million in mortgage loans if it did not agree to the Settlement Agreement, which Easy Financial had no right to do under the terms of the MRA.[13]  Therefore, Churchill (a multi-billion dollar company) shamelessly asks this Court to believe that it was deprived of its free will and had no alternative other than to enter into the Settlement Agreement.  However, at the same time, Churchill concedes, as it must, that the alternative of litigation was available to should Easy Financial breach the MRA.  (*See* ECF No. 37, ¶ 37.)

Even assuming the allegations in the counterclaim are true, which they are not, Churchill has failed to adequately state a claim for economic duress.  To void a contract on the ground of economic duress, the complaining party must show that its agreement was procured by means of

---

[13]    This allegation is facially implausible because Churchill's general counsel concedes that the total amount outstanding under the MRA was $33 million.  (*See* ECF No. 44-1, ¶ 6 ("…Easy Financial offered to enter into a settlement agreement in which it would pay Churchill $29,500,000 of the $33,000,000 owed to Churchill."))

(1) a wrongful threat that (2) precluded the exercise of its free will. *See Stewart M. Muller Constr. Co. v. N.Y. Tel. Co.*, 40 N.Y. 2d 955, 965 (1976); *see also Kamermann v. Steinberg*, 891 F.2d 424, 431 (2d Cir. 1989) ("New York law…establishes the following elements of economic distress: (1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no alternative." (internal quotation marks omitted). Clearly, as a matter of law, Churchill cannot meet this burden

Had Easy Financial made an improper threat, Churchill could have refused to sign the Settlement Agreement and instead pursued its legal remedies under the MRA. *Neuman v. Pike*, 591 F.2d 191, 194 (2d Cir. 1979) ("A threatened breach of contract for which there are adequate remedies does not constitute duress."); *Silverberg v. SML Acquisition LLC*, 2017 U.S. Dist. LEXIS 27204 (S.D.N.Y. Feb. 27, 2017, No. 15-CV-7129 (CS))("Every litigant or potential litigant who is considering whether to accept an offer of settlement has a choice to make: whether to settle the claim for a known sum, or to pursue litigation, which may offer the potential for a greater recovery, but also carries the risk of *no* recovery at all.") (emphasis in original) (citation omitted); *2 Broadway LLC*, 2001 U.S. Dist. LEXIS 4875, at *24 ("[T]he plaintiff must allege that the 'defendant's actions deprived him of his free will, and that the ordinary remedy for breach of contract would be inadequate'"); *Chachkes v David*, 2021 U.S. Dist. LEXIS 5652, at *44 (S.D.N.Y. Jan. 12, 2021, No. 20-cv-2879 (LJL)) ("That Chachkes chose to sign the 2019 Agreement, in lieu of suing, then does not make his signature coerced or give him the right to rescind the 2019 Agreement now that he apparently has second thoughts (or has received the benefit from that agreement).").[14]

---

[14] In addition, because Churchill has accepted the benefits the Settlement Agreement there can be no economic duress. *See Reid v IBM*, 1997 U.S. Dist. LEXIS 8905, at *6 (S.D.N.Y. June 24, 1997, 95 Civ. 1755 (MBM)) (no economic duress where plaintiff accepted the benefits and failed to tender back consideration received); *Hewett v. Leblang*, 2012 U.S. Dist. LEXIS 93123, at *18-19 (S.D.N.Y. July 5,

In light of the foregoing, Churchill cannot under any circumstances satisfy the "heavy burden" to make out a claim that it only agreed to the Settlement Agreement under economic duress.  Accordingly, the Churchill's eighth counterclaim should be dismissed.

### G.    Churchill's Ninth Counterclaim for Declaratory Judgment Based Upon Lack of Meeting of the Minds

Churchill's ninth counterclaim seeks a declaration that the Settlement Agreement is void because there was no meeting of the minds is also groundless. (ECF No. 37, ¶¶ 155-162.) However, the clear and unambiguous words of the Settlement Agreement have a definite and precise meaning as to which there is no reasonable basis for difference of opinion, that the requisite meeting of minds exists as a matter of law with respect to all material terms therein.

"Settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp., v. Palmadessa*, 173 F.3d 481, 484 (2nd Cir. 1999).  Under New York law, a contract must be "reasonably certain in its material terms" in order to be legally enforceable. *Arbitron, Inc. v. Tralyn Broad, Inc.*, 400 F.3d 130, 136 (2d Cir. 2005); *see also Clayton Servs. LLC v Sun W. Mtge. Co.*, 2023 U.S. App. LEXIS 8081, at * (2d Cir Apr. 5, 2023, No. 22-511) ("Under New York law, the fundamental basis of a valid enforceable contract is a meeting of the minds of the parties. If there is no meeting of the minds on all essential terms, there is no contract." (citation omitted).

---

2012, 12 Civ. 1715 (PKC)) (plaintiff who accepts and neither returns nor offers to return consideration received under settlement agreement cannot challenge its validity and undermines argument that releases were executed out of duress) , *aff'd* in relevant part, 150 F.3d 205 (2d Cir. 1998).  Thus, it is the general rule in New York that, where a party receives valid consideration for executing a release and accepts the benefits of that consideration before commencing a suit to challenge it, like here, that party is held to have ratified the release and is thereby barred as a matter of law from alleging economic distress in its execution.

Here, the bilateral email communications between the parties, which included their respective counsel as recipients, objectively manifest an expression of committed, mutual assent by the parties. (*See* ECF No. 48-5.)  The Settlement Agreement itself specifically states that mutual assent was to be manifested by the parties' confirming emails that the terms were "Agreed and Accepted."  In addition, Easy Financial's counsel separately asked the parties to confirm their mutual consent to the terms and conditions in the proposed Settlement Agreement by sending an email with the term "Agreed and Accepted."  As discussed above, *supra* pp. 9-11, both parties did so following a few final clarifications concerning the material terms.  Thus, there can be no question that Churchill objectively manifested its assent to be bound by the terms and conditions in the Settlement Agreement, as reflected in the email exchange. "The meeting of minds is an issue to be determined by examination of the totality of the circumstances." *United States v. Sforza*, 326 F.3d 107, 116 (2d Cir. 2003); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 427 (2nd Cir. 2004) ("To determine the presence of mutual assent, or a "meeting of the minds," the court must look for a "'manifestation or expression of assent . . . by word, act, or conduct which evinces the intention of the parties to contract."  (quoting N.Y. Jur. 2d Contracts § 29).

The parties irrefutably also agreed upon all of the material terms of the Settlement Agreement.  The emails demonstrate a conscious and deliberate give and take, resulting in a meeting of the minds as to the final material terms "related to the present dispute between the parties [i.e., Churchill and Easy Financial] over loans made and funds advanced pursuant to the [MRA]." (*Id.*)  The settlement terms, as clearly reflected in the writings, are not complex. Briefly summarized, Easy Financial agreed to pay Churchill the Settlement Amount of $29,500,000.00 in "in full satisfaction of all amounts due pursuant to the [MRA] on before December 31, 2023…"  And, upon full and timely payment of the Settlement Amount, "the parties mutually

agree to fully and completely release, discharge, forgive and compromise each other from any and all claims, liabilities or damages - whether presently known or unknown." And, if the full Settlement Amount was not paid by December 31, 2023, "Easy will owe the full balance of all of the amounts presently due under [MRA] (approximately $33 million)." Finally, "[t]he parties agree to fully cooperate with each other to effectuate the terms of this Settlement Agreement." (*Id.*)

"The primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere CIC L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc*. 232 F.3d 153, 157 (2d Cir. 2000); *Arbitron, Inc. v. Tralyn Broadcasting, Inc.,* 400 F3d 130, 137 (2nd Cir. 2005) ("The intent of the parties is manifest in the agreement."). "A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *Acumen Re Mgt. Corp. Gen. Sec. Natl. Ins. Co.*, 2012 U.S. LEXIS 127809, at *17-18 (S.D.N.Y. Sep. 7, 2012, No. 09 CV 01796 (GBD)) (citation omitted); *Carney v. Carozza*, 16 A.D.3d 867, 868 (3d Dept. 2005) (A settlement agreement "must be enforced according to its terms, without reference to extrinsic evidence unless the terms are ambiguous."); *Bank of N.Y.*, 14 F.3d at 759 (2d Cir. 1994) ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a choice simply because his assessment of the consequences was incorrect.")

There are no allegations supporting Churchill's ninth counterclaim stating that there was no meeting of the minds because Churchill did not agree to the terms in the Settlement Agreement; nor are there any allegations that the terms in the Settlement Agreement (including the mutual releases therein) are ambiguous. Furthermore, Churchill cannot create an ambiguity within the four corners of the Settlement Agreement by substituting its own unsupported interpretation of the contract language for the unambiguous language contained therein. In any

event, under well-settled New York law, "the existence of a binding contract is not dependent on the subjective intent of either [party]." *Schoninger v Green*, 763 F App'x 1, 4 (2d Cir 2019).

Accordingly, where the language of the Settlement Agreement is plain and unambiguous, as it is here, judgment as matter of law is proper. *Compagnie Financiere*, 232 F.2d at 157.

## IV. Churchill's Affirmative Defenses to the Settlement Agreement Should Also be Stricken

In this Circuit, affirmative defenses must meet the *Twombly/Iqbal* plausibility standard of pleading to be sufficient. As such, a party asserting affirmative defenses must "support these defenses with some factual allegations to make them plausible." *GEOMC Co*., 918 F.3d at 99 (2d Cir. 2019). Therefore, because Churchill has failed plausibly to allege with the requisite particularity the elements of mutual mistake and/or fraud required under Rule 9(b), the Court should strike Churchill's eighth affirmative defense (mutual mistake) and eleventh affirmative defense (fraud) pursuant to Rule 12(f), as well as for the same reasons that Churchill's sixth counterclaim (fraudulent inducement), seventh counterclaim (fraud) and ninth Counterclaim (declaratory judgment based upon no meeting of the minds) should be dismissed.

Similarly, the Court should strike Churchill's sixth affirmative defense (economic duress) for the same reasons the eighth counterclaim fails to state a viable claim for economic duress. And, to the extent that Churchill seeks to rely upon any other affirmative defense to void the Settlement Agreement, they should also be stricken for failing to satisfy the required plausibility standard.

## CONCLUSION

For all of the foregoing reasons, the Court should grant judgment on the pleadings dismissing Churchill's counterclaims and granting judgment in favor of Easy Financial on its claims because there is a binding and enforceable Settlement Agreement between the parties.

Dated: September 27, 2023

Respectfully submitted,

**TOPTANI LAW PLLC**

By: *_/s/ Edward Toptani_*
Edward Toptani (6703)
375 Pearl Street, Suite 1410
New York, New York 10038
Telephone: (212) 699-8930
Fax: (855) 514-2820
edward@toptanilaw.com

*Counsel for Plaintiff Easy Financial, LLC*