UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EASY FINANCIAL, LLC,

                                         Plaintiff,

        -v-

CHURCHILL MRA FUNDING I, LLC,

                                         Defendant.

CIVIL ACTION NO.: 23 Civ. 2948 (GHW) (SLC)

**ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

In this action arising out of the alleged breach of a settlement agreement (the "Settlement Agreement"), Defendant Churchill MRA Funding I, LLC ("Churchill") has moved under Federal Rule of Civil Procedure 19 to join as a necessary party Sunrise NPL, LLC ("Sunrise"), to whom Churchill assigned its rights under a 2020 Master Repurchase Agreement and Securities Contract (the "MRA") that precipitated the Settlement Agreement.  (ECF No. 44 (the "Motion")).  Plaintiff Easy Financial, LLC ("Easy"), opposes the Motion.  (ECF No. 50).  For the reasons set forth below, the Motion is GRANTED.

## II. BACKGROUND

### A. Factual Background

Easy and Churchill, both real estate lenders, were parties to the MRA.  (ECF Nos. 48 ¶¶ 1–2; 51 at 16 ¶ 2).  Easy alleges that, after a dispute about the MRA arose, Easy and Churchill entered into the Settlement Agreement, which "was memorialized in a series of comprehensive emails" on January 26, 2023.  (ECF No. 48 ¶¶ 6–9)  Pursuant to the Settlement Agreement, Easy was to pay off its outstanding line of credit under the MRA by selling to Churchill certain of Easy's

existing real estate loans at agreed sale prices.  (Id. ¶ 9).  Between January 27, 2023 and February 28, 2023, Churchill purchased from Easy 25 real estate loans (the "Loans") for an agreed sum of $29,799,093.76, leaving a credit balance in favor of Easy in the amount of $299,093.76 (the "Credit Balance").  (Id. ¶ 11).  Easy believed that, by selling the Loans to Churchill, it had fully performed all of its obligations under the MRA and the Settlement Agreement and was relieved of all further financial obligations to Churchill.  (Id. ¶ 12).  Easy thus demanded that Churchill pay the Credit Balance, which Churchill has refused to do and instead has "embarked on an intentional campaign to directly interfere with [Easy's] existing business relations and to harm its general business activities."  (ECF No. 48 ¶¶ 13–14).

Churchill presents a different version of events.   According to Churchill, in November 2022, Easy's principal, Benjamin Donel ("Donel"), "orchestrated a shell game whereby he took [] loans that were unquestionably sold to [Churchill] pursuant to the [MRA]," assigned them to entities he wholly owned, and then refinanced or "double pledged" them to other lenders and "pocketed the proceeds."  (ECF No. 51 at 17 ¶ 5).  Churchill also contends that, after he "conceded his theft and conversion[,]" Donel fraudulently induced Churchill "to accept concessions" as part of the Settlement Agreement, the enforceability of which Churchill disputes.  (Id. at 17–18 ¶¶ 6–7, 10).  Churchill similarly contends that it has been left with "nine loans that have functionally no value because of Donel's conduct," and that Easy and Donel have attempted to contact Churchill's investors and interfere with Churchill's business.  (Id. at 18–19 ¶¶ 11–12).

On March 28, 2023, Churchill, believing there to be "a legitimate risk with respect to any business" with Easy and Donel (ECF No. 44-1 ¶¶ 11-12), assigned all its "right, title, interest and obligations under" the MRA to Sunrise.  (ECF No. 44-2 at 1 (the "Assignment")).  As a result of the

Assignment, Sunrise obtained all title, right, and interest in Churchill's rights under the MRA and the Settlement Agreement.  (ECF No. 44-1 ¶ 14).  Churchill notified Easy of the Assignment in writing the same day.  (Id. ¶¶ 15–16; see ECF No. 44-3).

B. **Procedural Background**

On April 7, 2023, Easy filed a complaint, asserting against Churchill claims for breach of contract as to the Settlement Agreement, account stated, unjust enrichment, declaratory judgment, and defamation.  (ECF No. 1 (the "Complaint")).  On April 10, 2023, the Honorable Gregory H. Woods ordered Easy to show cause why the action should not be dismissed for lack of federal subject matter jurisdiction, specifically, the failure to allege complete diversity. (ECF No. 5).  On April 11, 2023, Easy responded to the order to show cause seeking permission to amend to assert additional information regarding the domiciliary of its members and those of Churchill.  (ECF No. 7).  On April 12, 2023, Judge Woods granted Easy's request, scheduled an initial conference for June 12, 2023, and directed the parties to file a joint letter by June 5, 2023 reporting on the status of the case.  (ECF Nos. 8; 9).  That same day, Easy filed the first amended complaint ("FAC"), asserting the same six claims against Churchill.  (ECF No. 10).

On June 5, 2023, Easy and Churchill filed their joint status report pursuant to Judge Woods' April 12, 2023 Order.  (ECF No. 17).  In the letter, Churchill stated its position that "[t]his action, at bottom, concerns a flagrant and illegal shell-game perpetrated by [Easy] and [Donel] to convert the mortgage loans [Churchill] purchased from [Easy] and to refinance or re-pledge these very same loans for Donel's financial benefit."  (Id. at 4).  Churchill also disputed the validity of the Settlement Agreement, claiming that "there ultimately was never a meeting of the minds as [Easy] continued to breach the MRA."  (Id.)

On June 26, 2023, Sunrise, "as successor in interest to Churchill[,]" filed an answer, counterclaims against Easy, and third-party claims against Donel. (ECF No. 24 (the "Sunrise Answer")).[1]  On July 10, 2023, Easy requested that the Court enter a certificate of default as to Churchill and dismiss the counterclaims and third-party claims asserted in the Sunrise Answer, on the ground that Sunrise was not a party to the action. (ECF No. 32).  On July 14, 2023, following a conference with the parties, Judge Woods struck the Sunrise Answer, without prejudice to the "ability of any third party to seek to enter the case through appropriate procedural mechanisms[,]" and extended Churchill's deadline to answer the FAC. (ECF No. 35; see ECF No. 38).  On July 17, 2023, Churchill filed an answer, counterclaims against Easy (the "Counterclaims"), and third-party claims against Donel (the "Third Party Claims"), which it then amended a week later. (ECF Nos. 36; 37).  In brief, Churchill alleges that the Settlement Agreement is invalid or void for lack of meeting of the minds, asserts that Easy has breached the MRA by assigning some of the Loans to other entities, and seeks declarations that the MRA has been terminated and the Settlement Agreement is void. (ECF No. 37).  On April 15, 2023, Easy filed an answer to the Counterclaims and a second amended complaint ("SAC"). (ECF Nos. 40; 42; see ECF No. 46).[2]

On August 17, 2023, Churchill filed the Motion, as to which Judge Woods set a briefing schedule. (ECF Nos. 44; 47).  On August 24, 2023, Easy filed a third amended complaint ("TAC"), reasserting the same six claims as the Complaint. (ECF No. 48).  First, Easy alleges that Churchill

---

[1] On June 27, 2023 and July 5, 2023, the Sunrise Answer was refiled after deficiency notices from the Clerk of the Court.  (ECF Nos. 27, 31; see ECF Min entry June 27, 2023).
[2] The Clerk of the Court rejected as deficient Easy's first attempt at filing the SAC.  (ECF No. 41; ECF min. entry Aug. 16, 2023).

has breached the Settlement Agreement by failing to repay the Credit Balance and by improperly recording and refusing to discharge assignments against properties in New Jersey, Florida, and California. (Id. ¶¶ 74–84). Second, Easy alleges that Churchill has failed to repay the credit balance despite receiving and accepting without objection "a full accounting demonstrating the Credit Balance that it owes to Plaintiff under the terms of the [MRA] and the Settlement Agreement." (Id. ¶¶ 85–90). Third, Easy alleges that Churchill has been unjustly enriched by failing to repay the Credit Balance. (Id. ¶¶ 91–97). Fourth, Easy alleges that it has fully performed by selling the loans to Churchill, which has failed to honor its promises under the Settlement Agreement, including that Easy "would be relieved of all obligations under the MRA, and it would be released and discharged of all claims thereunder." (Id. ¶¶ 98–103). Fifth, Easy seeks a declaratory judgment that it has satisfied all its obligations under the MRA and Settlement agreement, Churchill has no interest in the New Jersey, Florida, and California properties, and that the releases in the Settlement Agreement are effective (the "Declaratory Judgment Claim"). (Id. ¶¶ 104–108). Sixth, Easy alleges that Churchill's general counsel falsely informed a title company that Churchill purchased Easy's mortgage on the New Jersey property. (Id. ¶¶ 109–21).

On September 7, 2023, in response to the TAC, Churchill filed an answer and reasserted the Counterclaims and Third Party Claims, noting the pendency of the Motion and seeking "to preserve all claims and defenses." (ECF No. 51 at 16 n.2). Churchill alleges that Easy has breached the MRA by failing to repurchase mortgages that were in default, failing to protect Churchill's title and interest in mortgages Churchill purchased under the MRA, and fraudulently transferring and encumbering Churchill's security interests. (Id. at 31–35 ¶¶ 67–103). Churchill also seeks a declaratory judgment that the MRA has been terminated, and asserts conversion, unjust

enrichment, and wrongful misappropriation claims against Easy and Donel.  (Id. at 35–38 ¶¶ 104–28; id. at 40–41 ¶¶ 138–45).  Finally, Churchill alleges that Easy made false promises to induce Churchill to enter into the Settlement Agreement and seeks a declaration that the Settlement Agreement is void.  (Id. at 38–39 ¶¶ 129-37; id. at 41–42 ¶¶ 146–62).

On September 1, 2023, Easy filed its opposition to the Motion, and on September 8, 2023, Churchill filed a reply.  (ECF Nos. 50; 54).  After Judge Woods referred this action for general pretrial supervision and all dispositive motions (ECF No. 55), the Court held a conference with the parties on October 20, 2023.  (ECF Nos. 56; 69; ECF min. entry Oct. 20, 2023).  In a post-conference order, the Court directed the parties, inter alia, to focus their efforts for the following 30 days on discovery related to the enforceability of the Settlement Agreement.  (ECF No. 65). On November 30, 2023, Donel filed an answer to the Third Party Claims.  (ECF No. 77).

Separately, Easy has filed a motion for judgment on the pleadings (the "MJP") as to Churchill's Counterclaims, and a related motion for sanctions (the "Sanctions Motion"). (ECF Nos. 57; 59).  In the MJP, Easy argues, inter alia, that "Churchill has no interests in the MRA and the Settlement Agreement because they were assigned to Sunrise[,]" and Churchill thus "lacks standing to pursue its [C]ounterclaims[.]"  (ECF No. 58 at 12).  Similarly, in the Sanctions Motion, Easy argues that the Court should sanction Churchill for asserting Counterclaims that "it has repeatedly admitted were assigned to Sunrise[.]"  (ECF No. 60 at 9).  The Court has held briefing of these motions in abeyance while the parties focus on discovery related to the Settlement Agreement.  (ECF Nos. 62; 65; 71; 76).

### III. DISCUSSION

**A. Legal Standard**

Federal Rule of Civil Procedure 19(a) addresses "required joinder of parties" and defines the parties who are "necessary"—a term the Rule no longer uses—"in the sense that their joinder is compulsory if feasible." William A. Gross Constr. Assocs., Inc. v. Am. Manuf. Mut. Ins. Co., No. 07 Civ. 106439 (LAK) (AJP), 2009 WL 427280, at *5 (S.D.N.Y. Feb. 23, 2009).[3] Rule 19 provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A)      in that person's absence, the court cannot accord complete relief among existing parties; or
> (B)      that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).   As to Rule 19(a)(1)(B), courts require "more than an unsupported assertion that [the non-joined party] has a claim to that interest." Jonesfilm v. Lion Gate Int'l, 299 F.3d 134, 140 (2d Cir. 2002).  Rather, the moving party "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." William A. Gross, 2009 WL 427280, at *6; accord Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., 742 F. Supp. 2d 446, 455 (S.D.N.Y. 2010).  "In addition to this concern for the interest for the absent party, the Supreme Court has observed that 'the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another.'" Karasyk v. Marc Commodities Corp., 770 F. Supp. 824, 831 (S.D.N.Y. 1991).

---

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

B. **Application**

Churchill argues that Sunrise's joinder is required for two reasons:  (1) because Churchill assigned to Sunrise its rights in the Loans under the MRA and the Settlement Agreement, Easy cannot obtain complete relief without Sunrise's participation in this action; and (2) because the Court's determination of Churchill's rights and liabilities under the MRA and Settlement Agreement is binding on Sunrise, as Churchill's successor, Sunrise's interests will be impaired absent joinder.  (ECF No. 45 at 8–14).  Easy responds that: (1) Sunrise was not a party to the MRA or the Settlement Agreement and Easy can obtain complete relief against Churchill; and (2) any impairment to Sunrise's interests would not be caused by its absence from the litigation. (ECF No. 50 at 8–17).

The Court finds that Churchill has demonstrated that Sunrise's joinder is required under Rule 19(a)(1).  First, Easy's Declaratory Judgment Claim seeks a declaration that Easy has fully performed under the MRA and the Settlement Agreement, that Churchill has no interest in the New Jersey, Florida, and California properties, and that the releases under the Settlement Agreement are enforceable.  (<u>See</u> ECF No. 48 ¶¶ 104–108).  As Easy admits, due to the Assignment, Sunrise now "stands in the shoes of" Churchill and holds—or lacks—the same rights and interests in the Loans and the underlying properties that Churchill did.  (ECF No. 50 at 13 ("Sunrise's purported interests under the MRA would be the same as Churchill's at the time of the [A]ssignment.")).  As a result, any adjudication of the parties' rights under the MRA and the Settlement Agreement necessarily implicates Sunrise, which is therefore a necessary party. <u>See</u> <u>Bartfield v. Murphy</u>, 578 F. Supp. 2d 638, 650–51 (S.D.N.Y. 2008) (finding that party who had "an obvious interest" in claims raised on its behalf was necessary party under Rule 19(a));

D'Amico v. Doe, No. 03 Civ. 2164 (SR), 2005 WL 850961, at *3 (D. Conn. Jan. 20, 2005) (finding that party who claimed interest in property in dispute was necessary party with respect to claim seeking declaratory judgment as to ownership of the property); Weitzmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d 234, 251 (S.D.N.Y. 2002) (where plaintiff "explicitly request[ed] relief directly implicating" party, finding that party was necessary under Rule 19(a)). This situation is therefore distinguishable from MasterCard International v. Visa International Service Association, 471 F.3d 377 (2d Cir. 2006) (see ECF No. 50 at 12, 14), in which the Second Circuit affirmed the denial of a motion to dismiss for failure to join filed by a non-party who was neither a party to nor an assignee of the agreement in dispute between the parties. MasterCard, 471 F.3d at 385–86. Unlike the non-party in MasterCard, Sunrise, by virtue of the Assignment, is now interwoven into the claims between Easy and Churchill. These disputes cannot be fully resolved in Sunrise's absence.

Second, and similarly, the Court finds that Sunrise's interests will be impaired if it is not joined as a party. Any finding as to Churchill's rights under the MRA and the Settlement Agreement will necessarily confirm or restrict Sunrise's rights under the same agreements, given the Assignment. Furthermore, Easy undermines its strenuous objection to joining Sunrise by, on the one hand, claiming that Sunrise has no protectable interest in this action, while at the same time seeking sanctions against Churchill for asserting Counterclaims that Easy concedes belong to Sunrise. (Compare ECF No. 50 at 12–15 with ECF No. 60 at 6 (arguing that Churchill "lacks standing to prosecute the counterclaims that were assigned to Sunrise")). Easy's discovery requests to Churchill seeking information about the Assignment (see ECF Nos. 45 at 12–13; 50 at 16) similarly demonstrate the centrality of the Assignment to resolving the dispute between Easy

and Churchill, and further erode Easy's assertions that Sunrise has no legally protectible interest in this action.   Cf. Crouse-Hinds Co. v. InterNorth, Inc., 634 F.2d 690, 701 (2d Cir. 1980) (where contract involving absent third party was basis of a claim in the action, finding the third party's "presence [was] required" because its "rights [under the contract] would clearly be prejudiced if the relief sought by [one of the parties] were to be granted"); Rader v. Manufacturers Cas. Ins. Co. of Philadelphia, 242 F.2d 419, 428 (2d Cir. 1957) (in action seeking to invalidate an indemnity agreement and subsequent confession of judgment, finding that assignees of judgment "possess[ed] a present property or pecuniary interest in the basic subject matter of [the] action . . . sufficient to constitute them 'indispensable' parties").[4]

Accordingly, having found Sunrise to be a required party, and no party having argued that joinder will deprive the Court of subject-matter jurisdiction,[5] the Court directs that Sunrise be joined to this action under Rule 19(a)(1).[6]

---

[4] With respect to Sunrise's risk of incurring inconsistent obligations absent joinder, the Court need look no further than to Easy's own statements in a separate matter that Sunrise filed in New Jersey against Easy and other defendants seeking, inter alia, a declaratory judgment regarding Sunrise's lien priority with respect to the New Jersey property (the "New Jersey Action").  In support of its pending motion to dismiss, stay, or transfer the New Jersey Action to this Court, Easy argues that, "[i]f [the New Jersey Action] is not stayed, dismissed or transferred [to this Court] . . . , there would be a risk, no matter how slight, of different and perhaps conflicting adjudications, the risk of a lack of comity, and a clear waste of limited and valuable judiciary and party resources" because, in this action, Easy "seeks to adjudicate the crux" of the New Jersey action.  (Sunrise NPL, LLC v. Old Republic Nat'l Title Ins. Co et al., No. 23 Civ. 2761 (RMB) (SAK) (D.N.J.), ECF No. 37-1 at 4, 13).

[5] Because Sunrise and Easy are citizens of different States, Sunrise's joinder will not deprive the Court of diversity jurisdiction under 28 U.S.C. § 1332.  (See ECF Nos. 48 ¶¶ 17, 19 ("[Easy] is a citizen of California" and Churchill "is a citizen of New York and North Carolina"); 69 at 14 (counsel for Churchill stating that "[t]he principals of Sunrise are the principals of Churchill"); 31 ¶ 11 (Sunrise alleging it is a citizen of New York and North Carolina)).

[6] Because the Court finds that Rule 19(a)(1) has been satisfied, it is not necessary to reach the alternative arguments for permissive joinder under Rule 20(a)(2).

IV.**CONCLUSION**

For the reasons set forth above, Churchill's Motion is GRANTED.  At the telephone conference scheduled for December 18, 2023 (see ECF No. 76), Easy shall be prepared to discuss whether it intends to amend the TAC given the addition of Sunrise as a Defendant in this action. Following that conference, the Court will set a schedule for further proceedings.

The Clerk of the Court is respectfully directed to amend the caption of this action to designate Sunrise as a Defendant, and to close ECF No. 44.

Dated:     New York, New York
           December 7, 2023

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**